IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 10-cv-01259-MSK-MJW

ROBERT LOWMAN;
ANDRE LOWMAN; and
SERINOL LOWMAN; and
THE ESTATE OF SANDRA LOWMAN (ANDRE LOWMAN as personal representative),

        Plaintiffs,

v.

CITY OF AURORA,

        Defendant.

## OPINION AND ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS

**THIS MATTER** comes before the Court on the Defendant City of Aurora's Fed. R. Civ. P. 12(c) Motion for Judgment on the Pleadings **(#79)**, to which the Plaintiffs responded **(#81)**, and the City of Aurora ("Aurora") replied **(#79)**. Having considered the same, the Court **FINDS** and **CONCLUDES** the following.

### I. Background

In this action, the Plaintiffs assert claims under 42 U.S.C. § 1983 for violation of constitutional rights to substantive due process guaranteed by the Fourteenth Amendment of the United States Constitution[1]. The claims arise from delay by Aurora's emergency services in responding to a 911 call for medical assistance. Aurora moves for judgment in its favor contending that allegations in the Plaintiffs' Second Amended Complaint **(#47)**, even if true, are insufficient to establish a constitutional violation.

### II. Alleged Facts

---

[1] The only claims outstanding at this time are brought by the estate of the decedent, Sandra Lowman, and her family against the City of Aurora.

Although much detail is provided in the Second Amended Complaint (#**47**), the pertinent allegations can be summarized briefly.  For purposes of determination of this motion, the Court treats the allegations as true.

In April 2009, Sandra Lowman flew from her home in Detroit, Michigan to Denver, Colorado to see her son, Robert Lowman, and his family.  She became ill on the flight, and upon arrival was taken to an area hospital.  She was released from the hospital after an overnight stay.  During her ride from the hospital to the Lowman home, Ms. Lowman began having difficulty breathing.  When she reached the Lowman home, Robert Lowman and his wife each called the City of Aurora's 911 dispatch center and requested emergency medical assistance.  Subsequently, they spoke the dispatch center several times and were repeatedly reassured that a fire truck with paramedics was on its way and would be there very soon.  However, emergency responders did not arrive at the Lowman home for approximately fifteen minutes after the initial calls were made.  During the wait, Ms. Lowman expired.  She was pronounced dead of cardiac failure soon after the responders arrived.

The City of Aurora concedes that a fire truck should have taken a maximum of five minutes to arrive at the Lowman home.  The delay was due to confusion about the location of the Lowman home, questions about which jurisdiction should take the call, defects in the mapping systems on the fire truck and vehicles of other first responder vehicles, and other difficulties,

### III. Standard of Review

A motion for judgment on the pleadings brought under Fed. R. Civ. P. 12(c) is analyzed under the same standard as is a motion to dismiss for failure to state a claim brought under Fed. R. Civ. P. 12(b)(6).  *Corder v. Lewis Palmer School Dist. No. 38*, 566 F.3d 1219, 1224 (10th Cir. 2009).  There is a strong presumption against entry of judgment against a plaintiff or dismissal of a claim.  *See Cottrell, Ltd. v. Biotrol Int'l, Inc.,* 191 F.3d 1248, 1251 (10th Cir. 1999).  However, a claim must be dismissed if the complaint does not contain enough facts to make the claim

"plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face if the complaint contains sufficient facts for a court to draw an inference that the defendant is liable for the alleged misconduct. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *id.* at 556). Although a plaintiff is not required to include detailed factual allegations in a complaint, the complaint must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action" and must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In reviewing a complaint under Rule 12(b)(6), a court should accept, as true, all well-pleaded facts and construe all reasonable allegations in the light most favorable to a plaintiff. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). The standard must be applied in a manner consistent with the notice pleading framework set forth in Fed. R. Civ. P. 8(a)(2), which requires only that a complaint give a defendant "fair notice" of the claim and grounds upon which it rests. *Khalik v. United Air Lines*, ___ F.3d ___ , Case No. 11-1063, 2012 WL 364058 (10th Cir., Feb. 6, 2012) (citations omitted). The nature and specificity of the allegations required to state a claim will depend on context; moreover, although a plaintiff need not establish a *prima facie* case in the complaint, the elements of each alleged cause of action help to determine whether the plaintiff has set forth a plausible claim. *Id.*

The claims in this case are brought against the Aurora pursuant to 42 U.S.C. § 1983, which provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ." To assert a viable claim under section 1983, a plaintiff must show (1) he or she had a right secured by the Constitution and laws of the United States that was violated; (2) by a

3

person who acted under color of state law. *Hall v. Witteman*, 584 F.3d 859, 864 (10th Cir. 2009).

## IV. Analysis

The Plaintiffs assert that they were deprived of rights guaranteed under the Fourteenth Amendment of the Constitution.² It provides in pertinent part:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law.....

When an alleged constitutional violation is denial of substantive or procedural due process,³ the Plaintiff must identify the specific right of which he or she was deprived. Ms. Lowman's Estate contends that Aurora deprived Ms. Lowman of her right to life. Ms. Lowman's family, Robert Lowman, Andre Lowman, and Serinol Lowman contend that Aurora deprived them of their constitutional right of familial association with Ms. Lowman.

There is no dispute that the Plaintiffs have protected rights as asserted nor that Aurora employees were acting under color of state law. The issue raised by Aurora is whether the facts alleged in the Second Amended Complaint demonstrate that Aurora deprived the Plaintiffs of these constitutional rights.

**B.      Claim by Ms. Lowman's Estate**

Under the Fourteenth Amendment, a governmental actor may not interfere with a persons right to life without due process. These facts, however, do not show governmental interference,

---

² The Second Amended Complaint denominates several claims which assert various legal theories in accordance with *Monell v. Dep't of Social Serv.*, 436 U.S. 658 (1978), by which the City of Aurora can be held liable for the actions of the dispatchers and others who were its employees. Aurora challenges the sufficiency of the allegations under each of these claims, but for the reasons stated herein, it is not necessary to address such challenges.

³The Due Process Clause in its procedural mode guarantees fair process; however, the Due Process Clause "cover[s] a substantive sphere as well, barring certain government actions regardless of the fairness of the procedures used to implement them." *County of Sacramento v. Lewis*, 523 U.S. 833, 840, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (quotation omitted).

but instead governmental neglect–*i.e.*, delay in delivery of emergency services. Put another way, Ms. Lowman's Estate contends that by not providing timely emergency services, Aurora deprived Ms. Lowman of her right to life.

Generally, the due process clause of the Fourteenth Amendment protects an individual's life, liberty and property against "government actions." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). It is black letter law, however, that absent a custodial relationship, the Fourteenth Amendment does not create an obligation of the government to act to provide aid and protection to private citizens. *See DeShaney v. Winnebago Cnty. Dept. of Soc. Serv.*, 489 U.S. 189 (1989) (the Fourteenth Amendment does not confer an "affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual."); *Armijo By and Through Chavez v. Wagon Mound Public Schools*, 159 F.3d 1253, 1261 (10th Cir. 1998). Indeed, several courts have held that because municipalities have no constitutionally imposed duty to provide emergency services, the failure to provide competent services does not give rise to a constitutional violation. *See, e.g., Brown v. Commonwealth of Penn., Dept. of Health Emergency Medical Servs. Training Inst.*, 318 F.3d 473 (3d Cir. 2003), and cases cited therein. The same reasoning is applicable here. Because Aurora had no obligation to provide emergency services, its failure to provide timely delivery of such services could not deprive Ms. Lowman of her constitutional right to life under the Fourteenth Amendment.

In recognition of this limitation, Ms. Lowman's Estate argues that governmental interference can be premised upon the legal theory of a "state created danger."[4] In essence, Ms.

---

[4] There are two generally recognized exceptions to the principle that the Fourteenth Amendment does not give rise to an affirmative duty to governmental aid, specifically protection from the invasion of protected interests by private actors. One is the so-called custodial or "special relationship" exception, recognized in *DeShaney.* 489 U.S. at 200 (explaining that there is no Fourteenth Amendment duty by a governmental entity to protect individual rights unless the governmental entity affirmatively acts to deprive the individual of the ability to act for him or

Lowman's Estate argues that by undertaking to provide emergency services, but then by not providing them in a timely fashion, Aurora created a danger to Ms. Lowman's life. Aurora argues that the parameters of this theory are too narrow to encompass the circumstances in this case. The Court agrees.

The "state created danger" theory was first addressed in the Tenth Circuit in *Graham v. Indep. Sch. Dist. No. I–89*, 22 F.3d 991 (10th Cir. 1994), in which a mother sued a school district for the death of her son at the hands of another student. In addressing the theory, the Tenth Circuit recognized that *DeShaney* "leaves the door open for liability" for the harms inflicted by private parties where the State creates a dangerous situation for citizens who are not in state custody or renders them more vulnerable to danger. Nonetheless, the Tenth Circuit found no cognizable claim under §1983 because application of the theory required a showing that the governmental entity took affirmative conduct that placed the decedent in immediate danger from the non-governmental aggressor.

This same conclusion was reached in the most recent opinion addressing the state-created danger theory - *Gray v. University of Colorado Hosp. Authority*, 672 F.3d 909 (10th Cir. 2012). In *Gray,* the family of a patient who died while being treated at a state university brought an action under §1983. The family alleged that employees at the hospital failed to properly monitor and treat the decedent thereby causing his death. The Court engaged in the lengthy historical review of the scope and application of the "state created danger theory" in a §1983 context.[5]

---

herself, listing arrest, incarceration and institutionalization and dominion over the person as examples of such action). The other is the state-created danger exception, discussed here, which again is primarily a theory whereby a governmental actor can be held liable for harms inflicted by non-governmental actors. The "classic" state-created danger scenario is presented in *Wood v. Ostrander*, 879 F.2d 583 (9th Cir. 1989), where state troopers impounded a woman's car and abandoned her in a high crime area at 2:30 a.m. The woman was thereafter raped. Although the person who harmed her was a private party, she nonetheless stated a claim under section 1983 against the state trooper who had stranded her.

[5]The Tenth Circuit also determined, as a preliminary matter, that the decedent was not in the custody of the governmental entity or otherwise in a special relationship such that an

Ultimately, the Court found no cognizable §1983 claim because the Plaintiff had not pled facts sufficient to demonstrate several required elements: 1) affirmative conduct by the governmental entity that placed the decedent in danger; and 2) that the death resulted from violence inflicted by a third party.

The deficiencies present in *Gray* are also present in this case. The Second Amended Complaint identifies the affirmative actions of Aurora in Paragraph 140. It states "by answering the Lowmans' calls and promising to immediately send held, the City discouraged and prevented the Lowmans from taking Sandra to a hospital themselves." This allegation does not establish affirmative conduct by any of Aurora's employees that placed Ms. Lowman at risk of suffering a heart attack; the risk and extent of the danger to Ms. Lowman in this regard existed regardless of the Lowmans' communications and contacts with Aurora's employees.[6] Instead, the allegation reflects representations and promises upon which the Lowmans relied in making a decision not to transport Ms. Lowman to a hospital themselves. As noted in *Gra*y, however, reliance upon assurances or promises that the governmental entity will act, even if they are untruthful, does not equate to affirmative conduct by a governmental entity that creates the danger.[7] *Gray*, 672 F.3d

---

affirmative duty to protect the decedent's life was triggered.

[6]Nor did these alleged acts give rise to a special or custodial relationship, as they did not involve "state action involving force, the threat of force, or a show of authority, with the intent of exercising dominion and control over the person." *Gray*, 672 F.3d at 924.

[7] Ms. Lowman's Estate argues that this case is like *Sanders v. Board of County Com'rs of County of Jefferson, Colorado*, 192 F.Supp.2d 1094 (D.Colo. 2001), in which acts to restrain rescuers from assisting a victim qualified as affirmative acts for purposes of application of the "state danger creation theory." Although Ms. Lowman's Estate argues that Aurora affirmatively prevented providers from responding to the 911 call, the allegations in the Second Amended Complaint (Paragraphs 30 - 35) are fairly interpreted as being statements to other responders that their assistance was not necessary. Even if these allegations were construed as restraining some responders, they do not show restraint of all who might have aided Ms Lowman, as was the case in *Sanders*. The facts of *Sanders* are also distinguishable two other critical respects. In *Sanders*, the governmental entity controlled access to Columbine High School where Mr. Sanders was located; in contrast, Aurora did not control Ms. Lowman, her family or the premises where they were located. In addition, Mr Sanders' injury and death was caused by third party violence, which is not the case here.

7

at 925 ("like here, state actors were aware of the risk, expressly promised to eliminate the risk, and failed to do so, with no constitutional implications."). In addition, as in *Gray*, Ms. Lowman's death was not caused by an act of violence by a third party.

Although the facts here are tragic, they do not demonstrate a deprivation of Ms. Lowman's Fourteenth Amendment rights by Aurora. Judgment is therefore properly entered in favor of Aurora on this claim.

### C.   Claim by Ms. Lowman's Family

The individual Plaintiffs are all members of Ms. Lowman's family who assert that Aurora's conduct deprived them of their constitutional right to familial association with Ms. Lowman. The Tenth Circuit addressed the application of the Fourteenth Amendment to a right of familial association in a §1983 context in *Trujillo v. Board of County Comm'rs of Santa Fe County*, 768 F.2d 1186 (10th Cir. 1985). In *Trujillo,* the Court described the right of familial association as a liberty interest protected under the Fourteenth Amendment. However, as noted with regard to Ms. Lowman's right to life, the Fourteenth Amendment only protects individuals from governmental interference with that right.[8] *Trujillo* teaches that for a plaintiff to show deprivation of the right to familial association, the governmental entity must intend to deprive him or her of the specially protected familial relationship. In this case that would require an allegation that Aurora intended to deprive Ms. Lowman's family of their protected relationship with Ms. Lowman–or put another way, that Aurora intended for Ms. Lowman to die. The Second Amended Complaint contains no such allegation, nor can it be plausibly inferred that any Aurora employee intended for Ms. Lowman to be separated from her family through death.

The factual allegations in the Second Amended Complaint cannot support a cognizable

---

[8] The Court has some question as to whether there can be governmental interference with the right of familial association based on a death if there was no duty to protect the decedent's right to life, but that is not a question addressed by the parties.

claim for violation of the rights of Robert Lowman, Andre Lowman, and Serinol Lowman to familial association. Accordingly, it is proper for judgment to be entered in favor of Aurora on this claim.

**IT IS THEREFORE ORDERED** that the Defendant City of Aurora's Fed. R. Civ. P. 12(c) Motion for Judgment on the Pleadings **(#79)** is **GRANTED.**

DATED this 16th day of April, 2012.

                                              **BY THE COURT:**

                                              *Marcia S. Krieger*

                                              Marcia S. Krieger
                                              United States District Judge